Irene Dragan, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 3, 1978, before Judges ROGERS, BLATT and MACPHAIL, sitting as a panel of three.

600

*Eileen Yacknin,* with her *Louis Lessem,* for petitioner.

*Linda M. Gunn,* Assistant Attorney General, for respondent.

OPINION BY JUDGE BLATT, January 10, 1979:

This is an appeal from an adjudication of the Department of Public Welfare (DPW) affirming the decision of the Allegheny County Board of Assistance (Board) that Irene Dragan (petitioner) was ineligible for Emergency Assistance benefits.

The testimony taken at the hearing before the DPW's hearing examiner revealed the following series of events. On or about August 27, 1977, the petitioner received a notice from her landlord that, due to the sale of the house in which she lived, she would have to vacate the premises within 30 days. She attempted to find a suitable place to relocate and was promised that she could move into another apartment at the end of September. Before she could move, however, she was unexpectedly hospitalized for approximately one month, during which time she had no contact with her prospective new landlord but continued to believe that she would move into the new apartment upon her discharge. She left the hospital on October 25, 1977 and

then was told by the prospective landlord that he no longer was willing to rent the apartment to her.[1] Faced with the fact that she had no place to live, she contacted her attorney who suggested that she attempt to secure a place at the Women's Center South, a temporary shelter for women. When informed that there were no vacancies there, she appealed to a woman who lived near to her former home and this ex-neighbor agreed to take her in temporarily until she could find a permanent residence. On October 28, 1977, when the petitioner requested Emergency Assistance benefits from the Board in order to enable her to obtain an apartment, the request was denied on the grounds that she was not "homeless" as she would have to be to establish eligibility. She appealed this decision and a fair hearing was held, after which the hearing examiner affirmed the decision of the Board and further concluded that the petitioner was also ineligible because her situation did not constitute an "emergency." The DPW Bureau of Hearing and Appeals affirmed the order of the examiner and this appeal followed.

Our scope of review of a DPW adjudication is limited to a determination as to whether or not it was supported by substantial evidence, and was in accordance with the law and as to whether or not the petitioner's constitutional rights were violated. *Earley v. Department of Public Welfare*, 13 Pa. Commonwealth Ct. 17, 317 A.2d 677 (1974).

At the time of the petitioner's request for benefits here, the regulations governing eligibility for Emergency Assistance were found in DPW-OIM-PA Manu-

---

[1] The petitioner's furnishings had been moved out of her old apartment while she was in the hospital. Her attorney arranged to have the furniture taken to the home of the neighbor with whom she eventually stayed.

al §289.1 et seq. "Emergency" was defined in Section 289.3 as:

> sudden unexpected circumstances creating a breakdown of individual or family functioning in meeting basic family needs and resulting in a need for immediate action to avoid destitution of the individual or minor children residing in the family unit.

Section 289.4(a)(2), which provided for Emergency Shelter Expenses, required a claimant to establish (1) that her situation qualified as an emergency as defined in Section 289.2 and (2) that she was homeless as a result of that emergency. While "homeless" was not defined in the regulations at that time, proposed regulations were then pending, which would have defined the situation as follows:

> Persons are considered to be homeless when: (a) the individual/family is already without a place to stay, or (b) the individual/family had a home immediately prior to the emergency and is temporarily staying with relatives or friends, or (c) the individual/family is continuing to live in a dwelling but, because of the emergency, it is imminent that the individual/family will have to move from his home within 30 days.

7 Pa. B. 2443.

The Department characterized the proposed regulation as including "a more definitive statement of when a person is considered to be 'homeless as the result of an emergency'." 7 Pa. B. 2441.

The hearing examiner concluded that the petitioner's situation here did not rise to the level of an emergency because she had been given 30 days notice to vacate her premises. She argues, however, that her emergency situation did not result solely from her eviction but also from her unexpected hospitalization, during the period in which she had to move and we

must agree. The record indicates that her hospitalization was sudden and unexpected, and, because she had been evicted while she was in the hospital, she found herself upon her discharge in an emergency situation which required immediate action.

With respect to the issue of whether or not the petitioner was homeless, the hearing examiner had concluded that the proposed regulations were not applicable to her case because they had not been formally adopted at the time of her request for benefits, and it is true that the regulations were not formally in effect when the petitioner applied for benefits. It must be noted, however, that the regulations at that time did not contain *any* definition of "homeless." And, because the DPW itself has characterized the new definition as a "more definitive statement" of what was to be meant by that term, we believe that it is reasonable to conclude that the DPW policy regarding what constituted being homeless before the formal definition must have been essentially the same as it was after the adoption of the new regulation. Furthermore we believe the DPW characterization of the purpose of the new regulation as merely clarifying the *existing* policy makes it clear that it was not effecting a *change* in policy. The only evidence of the DPW's previously existing policy was set out in a memo which purportedly clarified the Department's policy and indicated that the regulations were being revised to incorporate the clarifications,[2] and the only reference to "homeless" indicated that it meant literally that a person was without a place to live. Upon leaving the hospital the petitioner here was no longer able to reside in her old apartment and she clearly

---

[2] It was this very clarification that led to the promulgating of the current regulations which were pending at the time of the request.

did not have another apartment into which to move. She was literally without a home, and the mere fact that her neighbor finally agreed to let the petitioner stay with her temporarily does not negate the fact that the petitioner was in fact homeless when she was discharged from the hospital.

For the foregoing reasons, the adjudication of the DPW must be reversed.

## Order

And Now, this 10th day of January, 1979, the order of the Department of Public Welfare in the above-captioned matter is reversed and remanded for the computation of benefits.